Alfred Hollander v. Commissioner.
Hollander v. Commissioner
Docket No. 28143.
United States Tax Court
1951 Tax Ct. Memo LEXIS 179; 10 T.C.M. (CCH) 617; T.C.M. (RIA) 51204; June 28, 1951
David Burstein, Esq., and Edward J. Keelan, Esq., 60 State St., Boston, Mass., for the petitioner. William C. W. Haynes, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax for 1944 and 1945 in the amounts of $17,416.41 and $5,841.10. The only issue is whether the respondent determined correctly the petitioner's income for the taxable years. The petitioner filed his returns with the collector for the district of Massachusetts. Findings of Fact The petitioner *180 resides with his wife in the town of Longmeadow, Massachusetts. His wife is Trude Hollander, whom he married in June 1942. The petitioner is a doctor of medicine, specializing in dermatology and syphilology. He has practiced his profession in the city of Springfield, Massachusetts, since June 1939, where he maintains his office and laboratory, which is a suite of five rooms. The petitioner's wife is a physician. She practices medicine independently in Springfield, Massachusetts. She maintains her own office separate from the petitioner's office. In 1944, and before, the petitioner and his wife occupied an apartment. In the beginning of 1945, they moved into a house in Longmeadow, which the petitioner bought on January 5, 1945. The petitioner was born in Germany in 1899, and he was 44 years of age in 1944. He arrived in the United States as an immigrant on August 28, 1938. He became a naturalized citizen on December 8, 1944. The petitioner's wife was born in Germany, and she arrived in the United States as an immigrant in May, 1936. The petitioner filed income tax returns for 1944 and 1945. His wife filed separate income tax returns for 1944 and 1945. In his separate return for *181 1944, the petitioner reported net income from his profession in the amount of $14,240.37, and income from dividends and interest in the amount of $101.48, total $14,341.85, and net income after deductions in the amount of $12,992.35. In his separate return for 1945, the petitioner reported net income from his profession in the amount of $16,560.47, and income from dividends and interest in the amount of $131.64, total $16,692.11, and net income after deductions in the amount of $15,266.56. The petitioner regularly kept accounting books and records during 1944 and 1945, in which the records of the receipts from his business were entered. The records included a cash journal, kept on a single entry cash basis, the entries in which began in 1939 and extend through 1946. The cash journal record shows the dates of the receipts, and expenses. The petitioner kept card records of his patients which fill eight drawers. The cards show the names of patients, the dates of their visits, the medical history of the patient, and the treatment given. During 1944, as shown by the cards, the total number of treatments given by the petitioner to patients was 4,608, and the total number of treatments *182 given in 1945 was 5,283. The petitioner kept, also, looseleaf books, alphabetically listing the names and addresses of his patients, the dates of the professional visits, the charges to patients, and the payments made by the patients for treatments, with the dates of the payments. The entries showed whether payment was made by check. Some patients did not pay for each visit at the time of the visit but carried accounts with the petitioner. The total amount paid by "charge" patients in 1944 was $4,870, and $4,378 in 1945. The petitioner employed an office secretary and assistant in 1943, and she worked in his office during 1944 and 1945. She kept the records of the patients' visits, their bills and accounts, and their payments. The petitioner also kept accounting records in the account books. Almost all of the practice of the petitioner was carried on at his office by appointment. Until 1946, the petitioner's basic charge was $5 per treatment, but he gave treatments to needy patients without charge, or he charged less where the patient required a great number of treatments. In 1946, the petitioner increased his standard fee to $10 for the first visit and $6 for succeeding visits. *183 The petitioner maintained a checking account in a bank in 1944 and 1945. From the petitioner's checks, bank statements, and account books, audits of his receipts and expenditures for 1944 and 1945 have been made by a certified public accountant, and written audit reports have been made. In 1944 and 1945, the petitioner also maintained savings accounts and had a safe deposit box. He carried insurance. The books and tax returns of the petitioner show the following receipts from his professional practice from June 1939 through 1946: Year
Amount
1939 (from 6/17/39 to 12/31/39)
$ 1,938.50
1940
4,586.00
1941
6,661.35
1942
10,310.00
1943
15,374.88
1944 (as reported in return)
19,514.80
1945 (as reported in return)
22,692.25
1946
30,046.00
The standard of living of the petitioner and his wife was modest in 1944 and 1945. The petitioner's wife contributed about $80 each month from her earnings to the family living expenses in 1944 and 1945. The petitioner's only gainful occupation in 1944 and 1945 was his medical practice, and his sources of income were his professional practice and a small amount of investments in securities. The petitioner gave lectures *184 in a medical school in Boston during 1944 and 1945. From the time the petitioner arrived in the United States until he opened his office in Springfield, Massachusetts, he did not engage in any income-producing occupation. The petitioner's brother, Ernst T. Hollander, lives in Brookline, Massachusetts. He was born in Germany, and he came to the United States in March 1936 from Holland. He left Germany in 1935. When he came to the United States, he went into the scrap iron business in Chelsea, Massachusetts. He employed up to 30 people in his business. Before he left Germany, Ernst Hollander sent his funds out of Germany to Holland, where they were held for him. He brought the funds to the United States in 1936 and used them to begin his business in the United States. The petitioner attended medical schools in Germany and practiced medicine in Westphalia, Germany, until he left in 1938. His uncle was a physician, and he took over his uncle's medical practice when he died. The petitioner started in the practice of medicine in 1926. While he resided in Germany, he accumulated a substantial amount of money from his practice of medicine, investments, and inheritance. His funds were German *185 marks. He also accumulated furniture, clothing, and equipment. He sent furniture and equipment to the United States from Germany, and he had it in his home and office during the taxable years. He brought over, also, a trunk of clothing. The petitioner made plans to leave Germany in 1936. Beginning in 1936, he gave marks to couriers, from time to time, to carry into Holland for safe-keeping. The petitioner went to Holland on his way to the United States. There he received his marks having a value of about $40,000. He brought about $40,000 cash to the United States in 1938. Upon his arrival in the United States, the petitioner went to his brother's home in Brookline for a few months. In March 1939, he moved to his own apartment. In 1939, the petitioner passed the examinations of the Massachusetts Board of Medical Examiners. While the petitioner was living with his brother, he loaned his brother approximately $6,800 of the funds he had brought with him from Germany. On June 7, 1939, his brother paid him $800 by a check dated June 17, 1939, and signed a document in the form of a receipt acknowledging that the petitioner had loaned him $6,000. The petitioner opened a bank account *186 in a bank in Springfield, Massachusetts, in June 1939 with a deposit of $1,000. Facts relating to deposits in petitioner's checking account and use of his earnings and savings: 1. During 1944 and 1945, the petitioner made cash payments for living expenses in the amounts of $1,143.72 and $2,054.92, respectively. 2. Out of fees received in his practice in 1944 and 1945, paid to him in cash, the amounts of $7,031.72 and $8,693.92 were not deposited by the petitioner in his checking account. Some of these cash receipts were used by the petitioner for living expenses in the total amounts set forth in the preceding paragraph, for office expenses, and to purchase bonds. The balances were deposited in savings accounts. 3. On February 8, 1944, $3,419.25 was deposited in the petitioner's checking account, on which $3,270.25 was the proceeds from the redemption of savings bonds, some of which belonged to petitioner's wife. He paid his wife her share of the proceeds by check dated February 15, 1944, in the amount of $492.75. 4. The petitioner, in 1945, deposited $130 in his checking account and $170 in his savings account, representing the proceeds of insurance. 5. The petitioner *187 paid premiums on insurance in the amount of $9,147.04 in 1945. The premiums were paid in part by check dated July 16, 1945, in the amount of $3,547.04, and the balance, $5,600, was paid in cash. 6. In 1943 the petitioner loaned his brother Ernst $1,726.80, the total of two loans in the amounts of $475.80 and $1,251. The petitioner's brother pledged a life insurance policy of the Travelers Life Insurance Company with the petitioner to secure the loan. On April 22, 1944, the petitioner paid $448.80 by check to the Travelers Life Insurance Company in payment of the current premium, which increased his loan to his brother to $2,175.60. On March 30, 1945, the petitioner received from the Travelers Life Insurance Company a check for $2,600.29, which amount was borrowed from the insurance company by Ernst Hollander to repay his debt to the petitioner, and which was deposited in petitioner's checking account in the Springfield National Bank. On April 4, 1945, the petitioner gave a check to his brother for $380.29, the difference between $2,600.29 and the debt owing to the petitioner at that time, and released the policy held by him as collateral. 7. In December 1944, the petitioner entered *188 into a contract to purchase a house, for his residence, in Longmeadow, Massachusetts, for $31,250. He paid a deposit on December 18, 1944, of $500 by check. He paid the balance of the purchase price, $30,750, on January 5, 1945, as follows: $750 in cash and $30,000 by checks drawn on his checking account. On January 4, 1945, he deposited in his checking account $29,155, which comprised $25,400 in currency, a check for $3,700, and other checks transferred from his wife's bank account. for $55. The check for $3,700 was for funds transferred from his wife's bank account. Ultimate Findings of Fact The cash payment of $750 which the petitioner made in 1945 on the house which he acquired on January 5, 1945, and the $25,400 currency which he deposited in his checking account on January 4, 1945, total $26,150, were part of the funds which the petitioner brought to the United States from Holland in 1938. The $5,600 cash with which petitioner paid insurance premiums in 1945 was part of the funds which the petitioner brought to the United States from Holland in 1938. The petitioner brought about $40,000 from Holland to the United States in 1938, which represented his savings and accumulations *189 in Germany prior to 1936, when he decided to leave Germany. Opinion The respondent has determined, upon the basis of his construction of the petitioner's net worth and unexplained deposits in petitioner's checking account in 1945 in the respective amounts of $28,150.55 and $10,022.56, that he had income in 1944 and 1945, in addition to the amounts which he reported in his income tax returns for those years. The foregoing amounts have been added to the petitioner's net taxable income for 1944 and 1945, and the deficiencies in income tax result from these additions to taxable income. The petitioner denies that he realized income from any source in 1944 and 1945 in the amounts which the respondent has added to his taxable income, or any other income besides what he reported in his returns. He had the burden of proving, in this proceeding, that the respondent's determinations were wrong. The question to be decided is whether the petitioner had any accumulation of funds in 1944 and 1945 which were his savings, and were not taxable income from some unexplained source, in the amount of approximately $32,000, as he contends. Unless the petitioner has proved that some of his bank deposits *190 in 1945 were from past savings and were not from sources which, under section 22(a) of the Code, are subject to income tax, we must sustain the respondent's determinations. See: ; Kenney v. Commissioner, 111 Fed. (2) 374; ; . Also, under section 41 of the Code, if a taxpayer fails to keep proper records so as correctly to show what his income was in the taxable years, the Commissioner can make computations pursuant to a method which does clearly show his income, and in so doing, he can take into account bank deposits and his net worth. In this proceeding, the reason that the respondent increased the taxable income of the petitioner for 1944 and 1945 is that on January 4, 1945, the petitioner made a single deposit in his checking account in the total amount of $29,155. The respondent's agent did not find in the regular books of account of the petitioner entries which accounted for such a large deposit. He concluded that part of the deposit represented income as of December 31, 1944. Other bank deposits which the petitioner *191 made in 1945, in lesser amounts, led the agent to conclude that the petitioner also had failed to report all of his taxable income for 1945. The petitioner introduced evidence to show the sources of all of the questioned bank deposits, particularly of the deposits which did not represent earnings. The greater portion of the disputed bank deposits are shown to have been made by the petitioner out of fund which he sent out of Germany to Holland and brought with him to the United States in 1938, but did not, prior to 1945, deposit in any bank account. Other disputed bank deposits have been shown to have been made out of the proceeds of insurance, redemptions of bonds, transfers from savings accounts, and repayments of loans, all of which are not taxable income. The petitioner introduced in evidence his books, accounting records, bank statements, checks, audit reports, and a great deal of detailed evidence. He kept with the aid of his office assistant, regularly, a set of accounts and records of his patients and of his practice. These accounts were kept for 1944 and 1945, as well as for other years. All of the evidence shows what the petitioner's earned income was in 1944 and 1945. *192 The chief question is the credibility of the petitioner's claim that he brought with him from Holland in 1938 about $40,000 cash. Upon careful scrutiny of all of the record before us, it has been found as a fact that the petitioner brought about $40,000 to the United States in 1938, and that the source of the greater part of the disputed bank deposits was the fund which the petitioner brought over in 1938. The evidence shows, also, that minor items of bank deposits were made from other sources - savings accounts, repayments of loans, proceeds of insurance - which did not represent unreported income of 1944 or 1945. It is held that the respondent incorrectly increased the income of the petitioner for 1944 and 1945 by the respective amounts of $28,150.55 and $10,022.56. The petitioner admits that $426.55 is not deductible from his income for 1945. Effect will be given to this item under Rule 50. There is no deficiency in tax for 1944, and the deficiency in tax for 1945 results solely from disallowance of the erroneous deduction of $426.55. *
Decision will be entered under Rule 50. Footnotes
*. This paragraph is as amended by Tax Court order dated August 1, 1951.↩